Porter v Bachner (2024 NY Slip Op 05191)

Porter v Bachner

2024 NY Slip Op 05191

Decided on October 22, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 22, 2024

Before: Webber, J.P., Friedman, Mendez, Shulman, O'Neill Levy, JJ. 

Index No. 100351/19 Appeal No. 2868 Case No. 2024-03704 

[*1]Henry Porter, Plaintiff-Respondent,
v
Michael F. Bachner et al., Defendants-Appellants.

Traub Lieberman Straus & Shrewsberry LLP, Hawthorne (J. Patrick Carley, III of counsel), for appellants.
Cozen O'Connor, P.C., New York (Vincent P. Pozzuto of counsel), for respondent.

Order, Supreme Court, New York County (Lynn R. Kotler, J.), entered on or about May 30, 2024, which denied defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.
Plaintiff brings this legal malpractice action against the attorney and law firm who represented him in connection with a Financial Industry Regulatory Authority (FINRA) investigation following the termination of his employment for charging $3,708.66 of personal travel expenses to his corporate credit card. Plaintiff challenges defendants' advice to accept a prediscovery settlement that included a lifetime bar prohibiting him from associating with FINRA members, as well as defendants' alleged failure to consider his future employment plans.
Defendants have not established their entitlement to summary judgment, as issues of fact remain about the reasonableness of defendants' advice to settle before discovery and accept a FINRA bar (see Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 442 [2007]; Bernstein v Oppenheim & Co., P.C., 160 AD2d 428, 430 [1st Dept 1990]). Although defendants' advice would have been reasonable if the circumstances were as they described — that plaintiff admitted to fraudulently submitting personal expenses and altered receipts for reimbursement, that he was unwilling to take even a small risk of criminal prosecution, and that a FINRA bar was likely inevitable whether or not plaintiff cooperated with the investigation — plaintiff has offered conflicting evidence that calls the circumstances into question. The record shows that plaintiff was informed of and agreed to defendants' strategy and presumably knew the truth of his own underlying conduct and his own preferences with respect to various courses of action, even if defendants misunderstood them. However, if defendants misstated the likelihood of a bar being imposed after cooperating with the FINRA investigation, then plaintiff would have been unable to appropriately assess his options, rendering his approval of defendants' strategy meaningless.
We reject defendants' argument that advice on the effect of a FINRA bar on plaintiff's future employment was outside the scope of the representation. The retainer agreement broadly defined the representation as one "in connection with a FINRA investigation relating to [plaintiff's] past employment at Goldman Sachs & Co." Defendants could not effectively immunize themselves for failing to provide appropriate advice on a subject within the scope of the representation by referring plaintiff to another attorney with whom plaintiff never connected, especially when a draft agreement with FINRA had already been circulated and the decision whether to accept it was time-sensitive.
Issues of fact exist with respect to proximate causation, as the parties submitted conflicting expert opinions regarding the likelihood of a post-investigation FINRA bar (see Rudolf, 8 NY3d at 442). This conflict cannot be resolved at [*2]this stage of the litigation.
Issues of fact also exist regarding the existence of "actual and ascertainable" damages (see id. at 442). Plaintiff testified that he lost career opportunities because of the FINRA bar and also had to pay legal fees in a separate action initiated in response to his partners' discovery of the bar. The extent to which the claims in that action stem from defendants' alleged negligence, as opposed to plaintiff's own misconduct in lying to his partners or other unrelated issues, is an issue for a factfinder. Similarly, the factfinder must determine the extent to which plaintiff should have further mitigated damages by seeking different career opportunities and the likelihood that he could have gotten a bad-actor waiver of the FINRA bar (see 17 CFR 230.506[d][2][ii]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 22, 2024